IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, SOUTHERN DIVISION

| | | |
|---|---|---|
| ANTHONY ANDERSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. |
| | ) | 1:08cv175-MHT |
| GOVERNOR JACKSON and the | ) | (WO) |
| CITY OF DOTHAN, | ) | |
| | ) | |
| Defendants. | ) | |

OPINION AND ORDER

Plaintiff Anthony Anderson has sued defendant City of

Dothan, and one its police officers, defendant Governor

Jackson, for violations of federal and state law.

Anderson charges Jackson, in his individual capacity,

with a federal excessive-force claim and a state assault-

and-battery claim.  He also brings a federal inadequate-

training-and-supervision claim against the city.[1]  The

_____

1.  Anderson also charged Jackson with a federal
false-arrest claim, and state false-arrest and illegal-
imprisonment claims, but Anderson explicitly withdrew
these claims at summary judgment.  See Plaintiff's
Opposition to Summary Judgment at 10.  In addition, he
brought a state negligent-training-supervision-and-
retention claim against the city, but he did not defend
(continued...)

court's jurisdiction over these claims is proper pursuant to 28 U.S.C. §§ 1331 and 1367.

This lawsuit is before the court on the defendants' motion for summary judgment.  The motion will be granted in part and denied in part.

## I.  SUMMARY-JUDGMENT STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  The court's role at the summary-judgment stage is to view the evidence in

---

1.  (...continued)
this claim in his opposition to summary judgment, see id. at 27-33, and clarified in the pretrial conference that his sole claim against the city was a federal claim for inadequate training and supervision.  Thus, this state claim is abandoned.  See Brasseler, U.S.A. I, L.P. v. Stryker Sales Corp., 182 F.38 888, 892 (11th Cir. 1999) (trial court need not consider assertions made in pleadings but not in opposition to a motion for summary judgment).

the light most favorable to the non-moving party and draw all reasonable inferences in favor of that party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).


## II. BACKGROUND

On the evening of March 23, 2006, at around 10:00 p.m., Anderson pulled into a gas station in Dothan, Alabama.  He had loud music playing.  Officer Jackson approached the car, tapped on the driver's side window, and asked Anderson to turn down his music.  Anderson recognized Jackson as a police officer and turned down his music. Jackson collected Anderson's driver's license and proof of insurance and walked away.

Another officer on the scene, Chad Kinney, told Anderson that he might receive a ticket or go to jail for violating the City of Dothan's noise ordinance.  Officer Kinney ordered Anderson out of the car, handcuffed and arrested him, and then walked him over to a patrol car.

3

Jackson and several other officers were standing by the car.  Anderson objected loudly to his arrest, directing his objections to Jackson. Jackson walked over, and the two men got into a heated argument.  At that point, Jackson struck Anderson, who was still handcuffed, twice in the jaw.  Anderson was then taken to the city jail. After his release, Anderson was treated for a fractured jaw.

### III.  DISCUSSION

#### A.  Anderson's claims against Officer Jackson

#### 1.  Excessive force

In response to Anderson's federal excessive-force claim, Officer Jackson asserts the defense of qualified immunity.

The qualified-immunity doctrine insulates government employees from the burden of litigation against them in their individual capacities stemming from actions taken pursuant to their discretionary authority.  <u>Harlow v.</u>

Fitzgerald, 457 U.S. 800, 807 (1982). Determining whether a government employee is entitled to qualified immunity involves two steps.  Sims v. Metro. Dade County, 972 F.2d 1230, 1236 (11th Cir. 1992).  First, the employee must establish that he acted within the scope of his discretionary authority when the allegedly wrongful act occurred.  This point is not disputed here, as the parties agree that Jackson was acting in his discretionary authority when Anderson was arrested.

Once it is shown that the government employee was acting within his discretionary authority, the burden shifts to the plaintiff to prove that the employee's action violated clearly established law.  Sims, 972 F.2d at 1236.  Courts follow a two-part inquiry when deciding whether a clearly established right has been violated.  Saucier v. Katz, 533 U.S. 194 (2001).  The court should ask first whether a right has been violated; if so, the

5

court then asks whether that right was clearly
established at the time it was violated. Id. at 201.[2]

Whether the force Officer Jackson used against
Anderson violated his Fourth Amendment right to be free
from excessive force depends on context. The court should
consider "the severity of the crime at issue, whether the
suspect pose[d] an immediate threat to the safety of the
officers or others, and whether he [was] actively
resisting arrest or attempting to evade arrest by
flight." Bashir v. Rockdale County, 445 F.3d 1323, 1333
& n. 10 (11th Cir. 2006) (quoting Graham v. Connor, 490
U.S. 386, 396 (1989)). "[G]ratuitous use of force when
a criminal suspect is not resisting arrest constitutes

---

2. In Pearson v. Callahan, ___ U.S. ____, ____, 129
S. Ct. 808, 818-21 (2009), the Court determined that the
two-step inquiry established in Saucier was no longer
mandatory; courts could move immediately to inquiring
whether the right was clearly established at the time of
violation. Adherence to the two-step procedure is
appropriate in this case, as the court finds that a right
was violated and that the right was clearly established
at the time of violation.

6

excessive force."  <u>Hadley v. Gutierrez</u>, 526 F.3d 1324, 1330 (11th Cir. 2008).

The facts described by Anderson establish an excessive-force violation, because at the time that he was struck by Jackson, Anderson posed no threat to Jackson or any other officer; he was in handcuffs, not resisting, and outnumbered by police officers.  Moreover, the crime at issue was anything but severe: an excessive-noise violation for playing music too loudly in his car.  On these facts, the force sufficient to fracture Anderson's jaw was unnecessary.[3]

The only remaining question is whether this right was clearly established at the time of the violation. Anderson's right to be free from excessive force, and the particular force described in this case, was clearly

---

3.  Jackson further argues that he did not strike Anderson and that Anderson spit in his face, forcing Jackson to use his open palm to move Anderson's head away.  But these factual assertions are contradicted by Anderson's testimony, and any dispute about the facts must be resolved by a jury, not by the court at summary judgment.

7

established at the time of his arrest.   See Hadley v.
Gutierrez, 526 F.3d 1324, 1333-34 (11th Cir. 2008) ("[A]
handcuffed, non-resisting defendant's right to be free
from excessive force was clearly established in February
2002."). It is a core Fourth Amendment principle that
law-enforcement officers may not unnecessarily harm an
individual during arrest.   See, e.g., Hadley, 526 F.3d at
1330 (officer used excessive force by punching a non-
resisting suspect once in the stomach); Lee v. Ferraro,
284 F.3d 1188, 1199 (11th Cir. 2002) (denying qualified
immunity based on clearly excessive force where officer
slammed suspect into car after she had been handcuffed);
Priester v. City of Riviera Beach, 208 F.3d 919, 926-27
(11th Cir. 2000) (denying qualified immunity in light of
clearly excessive force where officer allowed police dog
to attack arrestee who had already followed officer's
order to lie down on ground); Slicker v. Jackson, 215 F.3d
1225, 1233 (11th Cir. 2000) (officers used excessive force
by kicking and beating a handcuffed and non-resisting

8

defendant); <u>Smith v. Mattox</u>, 127 F.3d 1416, 1419 (11th
Cir. 1997) (denying qualified immunity based on clearly
excessive force where officer broke arm of suspect who
"docilely submitted" to officer's order to "get down").

A reasonable police officer would have known that
striking a cuffed, compliant individual with sufficient
force to fracture his jaw serves no legitimate
law-enforcement purpose and amounts to a violation of the
constitutional right to be free from excessive force.
Officer Jackson is not entitled to qualified immunity on
Anderson's excessive-force claim.  Summary judgment will
be denied on this claim.


2.  Assault and battery

Anderson has also stated a claim against Officer
Jackson for assault and battery under Alabama law.
Jackson denies that his actions constituted assault and
battery, and contends that, regardless, he is protected
against suit because of immunity available to Alabama

police officers for torts committed in the course of their discretionary duties.  Jackson's contentions are without merit.

In order to make out his assault-and-battery claim, Anderson must show that (1) Jackson touched him; (2) Jackson intended to touch him; and (3) "the touching was conducted in a harmful or offensive manner."  Ex Parte Atmore Community Hosp., 719 So.2d 1190 (Ala. 1998); see also Harper v. Winston County, 892 So.2d 346, 354 (Ala. 2004); Surrency v. Harbison, 489 So.2d 1097, 1104 (Ala. 1986).  Jackson concedes that he touched Anderson and that he intended to touch him; he denies that the touching was harmful or offensive.  However, according to the evidence read in Anderson's favor, Jackson struck Anderson on the jaw twice, with sufficient force to fracture Anderson's jaw.  The touching was therefore harmful.  Anderson has satisfied the elements of his assault-and-battery claim.

Jackson responds that Alabama law immunizes him against any such claim.  He relies on the doctrine of

10

discretionary-function immunity. 1975 Ala. Code § 6-5-338(a) grants statutory immunity from tort liability to a police officer for "conduct in performance of any discretionary function within the line and scope of his or her law enforcement duties." The immunity, however, does not protect conduct that is "so egregious as to amount to willful or malicious conduct or conduct engaged in bad faith." Couch v. City of Sheffield, 708 So. 2d 144, 153 (Ala. 1998).

To apply discretionary-function immunity, the court must first determine whether the police officer was performing a discretionary function when the alleged wrong occurred. If so, "the burden shifts to the plaintiff to demonstrate that the defendant acted in bad faith, with malice or willfulness in order to deny [him] immunity." Scarbrough v. Myles, 245 F.3d 1299, 1303 n.9 (11th Cir. 2001) (alteration in original) (applying Alabama law and quoting Sheth v. Webster, 145 F.3d 1231, 1239 (11th Cir. 1998) (per curiam)).

11

Anderson concedes that Jackson was performing a discretionary function within the meaning of the statute--arresting Anderson--at the time of the incident. See <u>Howard v. City of Atmore</u>, 887 So. 2d 201, 204 (Ala. 2003) ("Simply stated, the statute shields every defendant who (1) is a 'peace officer,' (2) is performing 'law enforcement duties,' and (3) is exercising judgment or discretion.").

Thus, the burden is Anderson's to show that Jackson acted in bad faith with malice or willfulness. Again, the evidence viewed in Anderson's favor showed Jackson twice struck a restrained individual in the jaw without cause. This evidence is sufficient to support a finding that the action taken was in bad faith and was malicious and willful. See <u>Wright v. Wynn</u>, 682 So. 2d 1, 3 (Ala. 1996) (finding plaintiff had put forth sufficient evidence of bad faith to go to jury where evidence showed trooper cursed and used excessive force in handling a handcuffed

arrestee).   Summary judgment will denied as to Anderson's
assault-and-battery claim against Jackson.


   B.   Anderson's claim against City of Dothan for
        failure to train and failure to supervise

   Anderson brings a federal claim that the City of
Dothan failed to train and supervise its officers
adequately, causing the excessive-force violation
committed by Officer Jackson.

   It is well-established that a municipality cannot be
held vicariously liable for the constitutional torts of
its employees based solely on a theory of respondeat
superior. Monell v. Dep't of Soc. Servs., 436 U.S. 658,
691-94 (1978).   Rather, a plaintiff seeking to hold a
municipality accountable must show that it adopted a
custom or policy that caused the constitutional violation.
Id. at 694-95.

   When arguing failure-to-train or failure-to-supervise
as a basis for liability, a plaintiff must show that (1)
the city failed to train or failed to supervise its

13

employees, (2) this failure was part of a policy or custom of failure to train or supervise, and (3) the failure caused employees to violate a person's constitutional rights. City of Canton v. Harris, 489 U.S. 378, 388-91 (1989); Gold v. City of Miami, 151 F.3d 1346, 1350 (11th Cir. 1998). "Since a municipality rarely will have an express written or oral policy of inadequately training or supervising its employees, ... a plaintiff may prove a city policy by showing that the municipality's failure to train evidenced a 'deliberate indifference' to the rights of its inhabitants." Gold, 151 F.3d at 1350 (quoting City of Canton, 489 U.S. at 388-89). A plaintiff seeking to make such a showing "must present some evidence that the municipality knew of a need to train and/or supervise in a particular area and the municipality made a deliberate choice not to take any action." Gold, 151 F.3d at 1350.

Anderson contends that the city was put on notice of the need for training in the use of excessive force because 79 excessive-force complaints were filed against

it between 1988 and 2008; seven lawsuits alleging excessive force, including Anderson's, were filed against it between 2004 and 2009; five other lawsuits involving "similar civil rights violations" were filed previously, two of which settled; and five individuals have been killed in the course of arrests by Dothan police (four in motor-vehicle collisions while police gave chase, and one who asphyxiated on a baggie he swallowed while trying to run from police).

Anderson offers no information about the merit of the complaints and lawsuits that were filed, nor any information about what was inadequate about the city's action in response to any claims that were actually meritorious. Because some complaints are likely without merit, simply showing the total number of complaints filed, without more, does not provide meaningful information about the extent of the use of excessive force or about the city's actions in response to those complaints. See Brooks v. Scheib, 813 F.2d 1191, 1193 (11th Cir. 1987) (holding

15

that, despite ten prior complaints, city did not have any notice of past police misconduct because the plaintiff "never demonstrated that past complaints of police misconduct had any merit"). It is entirely plausible that the city investigated each complaint, and took disciplinary action in some complaints but not others; Anderson simply has not provided the court with that information. Nor has Anderson provided any testimony, expert or otherwise, regarding whether an average of four complaints per year over the course of 20 years is excessive for a police department the size of that in Dothan. Finally, although troubling, the five incidents of arrestee deaths--four involving motor vehicles--during the course of police chases are not necessarily related to allegations that Dothan officers regularly used excessive force. In sum, Anderson's evidence is not sufficient to show how Dothan should have been on notice that its police department suffered from a policy or widespread practice of excessive force.

16

Furthermore, Anderson has provided no evidence of any similar prior complaints specifically against Officer Jackson. In fact, the city has shown that there were only three complaints against Jackson, all of which dated back to 1994 or earlier. More than a decade passed between those complaints and Anderson's complaint in this case.

Finally, Anderson has not shown how the city was deliberately indifferent to any such notice that might have existed about problems with the use of excessive force generally or with respect to Jackson specifically. Indeed, Anderson fails to explain how the City of Dothan's Internal Affairs Division was inadequate in its investigation of complaints; how the city was inadequate in its discipline of officers; how the city's guidelines for the use of force by police officers were insufficient; or how the city's mandatory 12-hour annual training was insufficient.

At summary judgment, the burden is Anderson's to provide evidentiary support for his claim that the city failed to train and supervise its police officers

17

adequately; mere assertions that existing policies for training and supervision are inadequate simply are not enough.  Summary judgment will be granted in favor of the city on the federal claim against it.

                              ***

     For the foregoing reasons, it is ORDERED as follows:

     (1) Defendants Governor Jackson and City of Dothan's motion for summary judgment (doc. no. 56) is denied as to plaintiff Anthony Anderson's claims for excessive force and assault and battery against defendant Jackson.  Only these claims will go to trial.

     (2) Said motion is granted as to plaintiff Anderson's claim that defendant City of Dothan failed to train and supervise its officers adequately, with judgment entered in favor of defendant City of Dothan and against plaintiff Anderson on this claim and with Anderson taking nothing on this claim.

     DONE, this the 21st day of August, 2009.

                         ___/s/ Myron H. Thompson___
                         UNITED STATES DISTRICT JUDGE